My name is Jesse Lutton and I represent Ron Sloan, a plaintiff and appellate, and I represent him as his pro bono jury. I must reserve one minute before rebuttal. This court should reverse the district court's dismissal with prejudice and remain in this case in order so that the plaintiff can move forward on his injuries. There was a first or second amendment complaint which wasn't looked at at all by the district court. This case presents an important opportunity for this court to resolve some real uncertainties and confusion among the district courts with regard to the question of the applicability of the whole of preemption to national stakes. Deciding solely on the question of whole of preemption in this matter has the advantage not only of clearing up some confusion in the entire circuit, but it also has the advantage of being the narrowest hole that this court could find, specifically because the district court made its dismissal solely on that basis. Thank you. There was, as I recall in this record, the district court dismissed the whole of preemption, but there was also a motion for summary judgment which the district court didn't reach with respect to the effect of the Oregon statute. And we've had some cases since then on the issue of incident in Oregon courts. Why isn't it, assuming for a second that that's a dispositive view, why isn't that the superior way for us to address the case? Well, Your Honor, it's because, well, it implies that if we get to the summary judgment motion stage, that we pass through at least the whole of preemption aspect. Summary judgment, why can't we decide whether or not this claim survives before closure? Right. Your Honor, the reason is because there was what would have been a genuine issue of material fact with regard to whether or not the plaintiff could proceed under the Oregon Custody Act as a statutory legal remedy, or whether he's made out a claim to proceed, rather, under the equitable claim he made, which is the client title specifically to answer your question. With respect to R.S. 86752, which is the custody statute, there are cases like Deep Gregorio in Woods, which have a narrow holding that basically says that when it's the sole ground for a claim that the trustee's injurious of sale was incorrectly identified as a beneficiary of the trustee, okay, in a no-sale context, it's foreclosed. However, that mining case is a worse case, and the exception here is when there's a fundamental flaw in the process. The flaw in this case, as I understand it, is it fairer to record something? That's correct, Your Honor. And so with respect to the summary judgment in our complaint on paragraph 16 of the first independent complaint, we allege that there was a written instrument produced and underwritten, and today that's what needs to be recorded. But if it is recorded, let's assume you're right, so let's just take the facts as you advise them to be correct, as I think we would if some of your judgments speak. Why is that a fundamental flaw in the proceedings if it was not recorded in the instrument? It's fundamental, Your Honor, because the Oregon Custody Statute, page 6.715, says that a trustee may not foreclose unless the trustee had it recorded in the cases that follow it, meaning that this bill in itself would be void. That seems as fundamental as it gets. But in what way has your client been prejudiced? It's clear that your client was in default. Your client got the notice, which would satisfy what you don't have a due process argument. And what does it matter whether there was a typical flaw or not in the recording? What difference does it make to your client? Your client's not making payments on the house. He's not entitled to live there. Somebody has the right to foreclose. Why does it matter whether he's concerned, whether it's A or B? What difference does it make? Well, Your Honor, first of all, it may not be clear from the district court's holding in the opinion below, but we also have pleadings that were incurred in the Second Amendment complaint that indicate misrepresentation in lawful payment practices during the period in which the plaintiff was making his payments. For instance, the factual record shows that in this case, this was one of those 2007-2008 cases where the banks were dual tracking and weren't accepting payments, including people in default, on the 81st day. So it isn't true that the plaintiff in this case wasn't. He tried to make a full payment of all his arrears shortly after, and so if we made it through the gatekeeper, we would go back and argue that. So it may matter if you were able to get past full accreditation. So just quite explain how your client was prejudiced by the foreclosure. He was lost. He lost his house, certainly. But he was making the payments. He was declared to be in default. He had notice that they were going to foreclose, and he didn't take any action before he foreclosed. He didn't go to seek an injunction. He didn't assert declaratory something or other, declaratory judgment. That's not exactly what he did. He didn't reach into the court system to get a remedy in terms of the Oregon Custody Statute proceedings. What the plaintiff did do, if he wasn't sitting around, he went to bankruptcy court and the gavel unsealed by two hours. And previous to that, he had filed nine loan modification requests. And during those loan modification requests, as was the case with many borrowers who were affected by that period of time, all of those were laws and practices that we allege kept him from being able to take a loan modification. I want to get back to something you said before. I'm looking at your proposed 30-minute complaint or second amendment. It says we're not raising any new claims. We're just adding facts. The only remedy we're seeking is quiet time. Is that correct? That is not correct for the second amendment complaint, Your Honor, and the characterization that the district court made as to what our claims were. Well, I'm looking now at the second amendment complaint, and I'm looking at the claims for relief. And what it says is what you seek is quiet time. You don't seek to have a judge. Your Honor, quite frankly, that the second amendment complaint does underwrite well formally. It does allege facts sufficient for disciplinary purposes, and also which are different from the first amendment complaint. But it's labeled quiet time. That's correct, Your Honor. And the remedies sought at the end are the quiet time. That's for craftsmanship, but it's not that the facts that are provided in the second amendment complaint were significantly different or don't make out that claim. See, I'm having some difficulty thinking that the district court somehow erred in dismissing claims that weren't brought to its attention. When the motion was filed, did your side say, well, wait a minute, we're not just seeking quiet time, we're seeking damages or some other remedy? Well, we did not because the court at that point was just looking at the first amendment complaint, which in that complaint had only a few claims, which were But then you still needed to file a second amendment complaint. That was needed. And they filed that with the court, and that second amendment complaint, just like the first amendment complaint, is labeled quiet time, and in its remedy section seeks only the quiet time. That's correct, Your Honor. But that's just for craftsmanship in terms of whether or not if the court was to get past the following preemptions, I think it was a really important issue and the opportunity for the court here, but if the court were to have gotten past all the preemptions and actually looked to the merits of the second amendment complaint, we would have been able to point that out to the court, okay, this was crafted and filed in a hurry when new court of counsel came on, poor craftsmanship. If you look at the factual contentions, it's not required that you directly label the prior. No, no, that's not what I'm saying. What I'm saying is the district court treated this as if it were quiet time. It treated the first amendment complaint as if it were quiet time. Right, and the second amendment complaint, I think on its face, also would have been quiet time, actually. That's what it did on its face, but I would say that the problem here is not so much that the court did a thorough analysis, the error that we're dealing with in the district court level is really that they saw a whole preemption, decided that that applies across the board. It's a talismanic. This case is done, and we really don't need to inquire any further. Well, but the district court did look at the second amendment complaint, and it did seem that you had only one claim for relief, and that was for quiet title, understanding that you also added some additional facts. But when you look at document 68.-1 on pages 10, 11, and 12, you are essentially saying the same type of argument that you did in your first amendment complaint, and that is judge, pull the preemption, that's not a lie. And this is what we want. We want you to forward this and send it back, and the district court said, I've looked at your new complaint. It would be futile to proceed with this complaint, because the same legal reasoning that required dismissal of the first complaint requires dismissal of the second complaint. Well, Your Honor, I respectfully disagree. I respectfully disagree with that. Because, as I said, if you were to compare paragraph by paragraph the two complaints, which you may have done already, you'll see the additional facts you allege, second decree premises, which the courts in this circuit have already said, are things that pass through whole of preemption if we get past whole of preemption. I think the thing that wasn't argued strongly enough in there was the fact that, as we did in our brief, the Gerber case, which is what we rely on pretty strongly in our brief, is a case that has sites for the proposition that whole of preemption does not apply to the two complaints. The Gerber case has been followed in the Ninth Circuit in many districts, in the First Circuit, in the Second Circuit. It's been followed in the Fifth Circuit. It's an opportunity at this point for the court to look again at that whole of preemption, but looking at that issue in a different way. Perhaps it would have paid more careful attention to see what. Well, I'm still troubled by your contentions about the second many complaint. I'm reading from the last page of the motion, which says, the second many complaint does no more than add factual detail necessary to support plaintiff's response to emotions, rather than add new claims or defendants, which might raise new issues or raise new remedies. So didn't the motion express the discretion that you were seeking anything more than what the first many complaint was seeking? That wasn't just your court's holding. No, I'm reading from the motion. Okay. I'm reading from the motion. Page, the final page, page three of the motion for leave to amend says, the second many complaint does no more than add factual detail necessary to support plaintiff's response to emotional emotions, rather than add new claims or defendants, which might raise new issues or raise new remedies. So you told the district court that the second many complaint just had more facts, but it wasn't seeking any different relief than the first many complaint. Isn't that true? In the motion, again, I think that's true. Conceivably, that was what the motion said at the time. The intention was not that. Again, the 22nd version is that pro bono counsel was appointed. Sure. By the way, in case we forget later, at least I'm going to use the word pro bono counsel as an interstitial. And I understand that the court's desire to rule in that narrow way to go after the second many complaint. But I think that even if the court wants to decide on that basis, it's still, as your honor said earlier, you have to take for granted for the second that the court has already ruled that holo preemption doesn't apply, and then you go there. So I want to keep that clear in focus because the case that the counsel here is going to argue is the master case, which is key to their brief. And that case is a case that stands for the proposition that holo preemption does apply to national banks. And that case has only been up here now for a minute and a half. Did you want to reserve time for it? I wanted to reserve one minute. Okay. And that case, just to continue, has not been followed in any other circuit but the Ninth Circuit, and then only in California, and then most exclusively in the Central District of California. I think the opportunity here that, again, the narrowest holding that this court here has come out with is that the holo preemption does not apply to national banks. Thank you. Thank you. Ms. Howard? Good evening. Lisa Court, Molly Henry on behalf of Wells Fargo and Fannie Mae. There are three reasons to affirm the district court's dismissal in this case. First off, holo preempts appellants' claim in an attempt to impose an Oregon law reporting requirement on the servicing, processing, and or sale of a loan that was originated by a federal savings bank. Second of all, appellants' interests in the property were foreclosed and terminated at the 2012 foreclosure sale and this post-sale attack, which was brought nearly 18 months after the sale, is barred by Oregon law. And finally, even if Oregon law was not ramped up by holo in this case, no recording was required because the assignment of the trustee had occurred as a matter of law when World Savings Bank transferred the promissory note to Fannie Mae. Do you agree that the district court didn't address the second duality in the post-courts? The district court just did a holo preemption. That's correct. There were two motions pending before the district court. We originally brought a motion to dismiss on the basis of holo preemption, but given the trouble that Mr. Aslami was having retaining pro bono counsel, the motion was kicked back many months and we were pressed up against it. Tell me, let's assume that this is, for purposes of discussion, one of those cases under Oregon law that survives the foreclosure statute. In other words, our court has said, and the Oregon intermediate appellate courts have said, there are some cases that you're not barred from attacking the foreclosure sale for reasons that you didn't raise before. Let's assume for a moment this is one of them. Would that still be preempted under holo in your view? Yes, I believe it's two separate issues. Yeah, I'd expect to assume one issue. Let's assume that this is the kind of case that's probably what it was. In other words, the trustee had no power whatsoever to sell the property. That's the kind of one that the Oregon case that survives the Oregon foreclosure statute. If it weren't that kind of case, would holo still preempt the claims that the client has raised? Absolutely. We're talking about whether an Oregon state law bars the claim of sale versus whether federal law preempts and occupies the field and thereby preempts the various state statutes. Right, that's exactly right. So let's assume there was this judge might be possibly a fundamental flaw in the process that prejudiced the plaintiff in this case. What would his remedy be under holo? Of course, so they didn't really have a lien at all. He went on and got a phony trustee and had a phony foreclosure suit, and he did it from within the state court and said, I want a quiet title. Would you say you can't do that because of holo? Well, holo preempts the specific state law that he is alleging was wrong in this case, which is the failure to record the assignment. I understand your position that holo preempts all state laws that govern the foreclosure of sales by national banks or foreclosure of property by national banks. Is that your position? Our position is not that holo preempts all state laws, but holo preemption is governed by the analysis under Silva. So there's certainly a presumption, assuming holo applies, there's certainly a presumption that a state law that affects the lending activities of a federal savings bank loan is preempted, and the first step is to look under the regulation under subpart A. And if it's a law aimed at one of those activities listed in part A, then the law is preempted. And our position in this case is that the recording requirement imposed under ORS 86-752 is a lie. I understand your position. I'm trying to figure out what the limits of your position are. In terms of the limit of holo preemption overall? Overall. How much of state lending and foreclosure law is preempted under your view of holo preemption? Well, I think the answer to that question is in the regulation itself. Subpart C of the regulation says that laws of general applicability are not preempted to the extent that they only incidentally affect the bank's lending activities. So, for example. Or isn't that one of those? This is a quiet type of claim, but the wrong underlying the quiet type of claim is the alleged violation of the Oregon Statute, which expressly seeks to regulate the bank's ability to sell loans. But is it more than incidentally burdening the recording requirement? Is that more than incidentally burdening the bank's lending activities? Banks record things all the time. They do record things all the time, and they also routinely sell pools of loans back to the GSEs to free up their own capital for further lending. And these are not the types of assignments that are recorded in a written memorialization of the transfer. It's a transfer of the promissory note, which by operation of law transfers the rights in the deed of trust. Yeah, that's an argument that you didn't violate the Oregon law. Right. That's not a preemption argument. I'm trying to figure out why it's so burdensome on the bank when something is, when a document in Oregon law, I assume, requires to be recorded. It's recorded. Well, the statute's deregulation requires anything more than an incidental burden. So in this case, arguably, if the bank was required to write and record a written assignment and every time it transferred a loan back to Fannie Mae or Freddie Mac, that would require enormous work on the bank and require it to amend all of its processes to do that, whereas these loans are routinely transferred back or sold back to the investor in order to free up capital. So it changes the way that they're servicing these loans fundamentally, which is more than an incidental effect on lending under the statute. Am I correct that Mr. Sloney does not dispute that he received notice of the record undisputed on that point? The record is undisputed on that point as well as on the underlying default. The reasons for the default are disputed. Yet he claims that his case is based on an equitable claim for equitable relief if that's the case. How does preemption impact that when that's based on the legal right as opposed to the default right? It's an interesting distinction that he's making, but I think the district court's order is clear that preemption applies to the sole wrong in this case that is giving rise to his quiet title claim. So his equitable versus legal argument really complains to the remedy that he's seeking, which is quiet title, with the wrong that he alleges gives him the right to void Wells Fargo's due to trust, which is the alleged recording. And it's the requirement to record that it's preempt and not necessarily the right to seek equitable relief. But in this case, his claim failed as a matter of law because the underlying wrong was preempted by law. And so if the legal right isn't there, then no matter what you call it, that falls to him. Exactly right. Does it make any difference that his case, the Wells Fargo, is the higher end of the foreclosure still because he's still under? I want to make sure I understand. The act was made to protect good faith buyers of foreclosures. So I think the origin act, correct? That's correct, as well as to protect the lender's rights to their property. So that's what I'm asking. Does it appear you're in a dual role, in fact? I'm serious. It's just a stranger who comes in off the street and makes the bid and buys it. No, a third party buyer. That's correct. So does that make any difference? I don't believe it does. There's certainly nothing in the statute that's distinguished against that. The statute gives the grantor a right to make a bid at the sale, and that's exactly what happened here. I don't think there's any differences to whether there was a third party down the line who purchased it or not. In terms of the statute, it says that Mr. Aslami's rights were foreclosed and terminated. So it really goes to his rights. And then, of course, under this court's more recent decision, in Woods and the Oregon Court of Appeals' decision in DePrigorio, it's a balancing question of whether there's a line drawn. Is this a technical violation of the Oregon Custody Act? That's the last straw. Is it a more substantive violation that really affects the borrower's substantive rights? And if it's a technical violation, we would argue such as a recording violation, then the grantor's rights remain terminated at the sale. But if it's a more substantive violation, such as a lack of notice, a lack of underlying default, then the rights are not foreclosed and terminated under the statute. Opposing counsel in his argument talked a bit about all the efforts that Mr. Aslami made in trying to renegotiate the bank. He missed the cattle by a couple hours. He was over in bankruptcy court doing what he could. Is all of that irrelevant to our discussion? Well, we're talking about a single claim that he brought in the district court below for quiet title. And the basis for that claim was the alleged failure to record. And that set out the first amended complaint. And as the court has pointed out, the second amended complaint had effects. But it was the same claim. And so ultimately, the district court correctly concluded that permitting the amendment would be futile because it was analyzing the same claim and the same alleged legal wrong, which was the failure to record under the statute. OK. Do you think then that if there was a, to borrow counsel's phrase, a better-drafted second amended complaint, it might have been able to survive? Do you think there would be a different claim or a different remedy? OK. I suppose it would depend on what he was arguing. I think the state law claim was preempted in this case. And if I time, I would also submit that it failed on summary judgment because there was no written assignment to record. So I suppose it would depend on the fact certainly there are claims that would not be preempted under state law. Perhaps federal claims, for example, would not be preempted. But then you run into the same problem as to whether those claims survive in a quiet title action post-sale. So I think the court has three separate grounds to affirm it. And you'd really need to look at each separate argument in order to answer that question. Can you tell us a little bit about your argument that recording wasn't required under law? Certainly. And I take it it's because you say that it was transferred, that it was transferred by operation of law? That's right. Tell me why that's so. I thought affirmative action was taken to transfer the title as opposed to it. It just occurred because the statute was passed. The transfer in this case occurred as a matter of law because back in 2006, World Savings Bank sold a portfolio of loans back to Fannie Mae. And as the Fannie Mae became the investor in the loan, World Savings Bank continued to service the loans around us, which is a regular practice in the mortgage-making industry. And the claim in this case is that when the notes were sold to Fannie Mae, of course the deeds of trust follow up notes, that that assignment to Fannie Mae needed to be recorded under an Oregon statute, which is now 86-752. And the Oregon Supreme Court addressed this exact issue in two Supreme Court cases in 2013, to a grand record in a day. And in that case, the court held that only written assignments needed to be recorded prior to foreclosure under the statute. Assignments that occur as a matter of law when the promissory note is transferred, so endorsed in blank and transferred, and the deed of trust follows the notes, those don't need recording. There's no post hoc requirement to memorialize an assignment of the deed of trust that occurs as a matter of law. So that's black letter, Oregon law, and the undisputed evidence in the record in this case is the declaration of Michael Dolan, which is in the supplemental excerpts of record. And in that declaration, Mr. Dolan says that World Savings Bank sold the promissory note in a pool of loans to Fannie Mae in 2006, and that there is no written memorialization of the assignment of the deed of trust that could be recorded. So we would submit as a third round that summary judgment is also appropriate. And there's a matter of notice, the minimum applicable. I take it you're, I understand the argument you're making. There's a matter of the notice that the recording statutes are supposed to give when there's just the assignment of the note. How is the rest of the world supposed to know who the owner of the deed of trust is? It's an interesting question because there's often a difference between the owner and the beneficiary. Wells Fargo remains the beneficiary of this loan. World Savings later became part of Wells Fargo, retained the note, and was the beneficiary and was the servicer. So Wells Fargo was always the front face with the borrowing assistance. So Wells Fargo commenced foreclosure. Wells Fargo completed the foreclosure. So the fact that Fannie Mae had an investment interest in the loan really doesn't affect borrowers. So for recording purposes, it's still that people in Selma and Wells Fargo have the beneficiary interest in the deed of trust. That's correct. So unless the court has any further questions, I would just conclude with the fact that there are multiple grounds in the records for affirming dismissal. Thank you. Thank you. Does one of you have time remaining? Thank you, Your Honors. Just to address a few points here. First of all, it's not uncontroverted in the record that there was an assignment by operation of law. In fact, in the first amendment complaint, as I had mentioned previously, that's paragraph 16. It's page 24 of the excerpts. We not only allege that there was a written assignment, we also said why it was. And that's because at the time that Fannie Mae had received that assignment, Fannie Mae's own servicing manuals state clearly that it was a requirement that a written assignment was done. Okay, they had been affidavit from someone that says it wasn't. We say it was. And we have something to support that. And once you, for some reason, it's not uncontroverted, we can certainly, as Your Honor, at a point now. But you're certainly not alleging that Fannie Mae had some date for a client to follow its own manual, are you? No, Your Honor. That's just to suggest that we didn't even reach the discovery phase. That there was, in fact, a written assignment there. And the reason why we suggested that is on information relief, is because the servicing manual of Fannie Mae required that that type of thing happen. So it's not uncontroverted. And certainly, in the second amendment complaint, we could make that argument an indestructible argument. But I think the last thing I want to say is that the counsel from the other side, Your Honor, to start with, with hold of preemption applies, or it doesn't apply. And that's a complicated analysis. But this is not a complicated case. Wells Fargo is a national bank. Hold of preemption does not apply to national banks. Deciding on that issue, we are in a much simplified position. And from there, we can talk about what type of claims that the plaintiffs can make in the second amendment complaint with a considerably better draft of the chips and a little bit more focus on the issues in this case. Thank you, Your Honor. Thank you to both counsel for the argument. Mr. LaGuardia, we thank you for your service to the court representing Pro Bono. Your client was well represented today. Thank you both counsel. Case is submitted.
judges: Bybee, Hurwitz, Zouhary